Joshua LeDOUX, et al., Appellants,

v.

M.A. MORTENSON COMPANY,
Respondent.

No. A12–2308.

Court of Appeals of Minnesota.

July 22, 2013.

 

Markus C. Yira, Yira Law Office, Ltd., Hutchinson, MN, for appellants.

Janet Stellpflug, Amy Mahowald, Aafedt, Forde, Gray, Monson & Hager, P.A., Minneapolis, MN, for respondent.

Considered and decided by BJORKMAN, Presiding Judge; ROSS, Judge; and KIRK, Judge.

## OPINION

ROSS, Judge.

Joshua LeDoux, a laborer employed by construction subcontractor Northland Concrete & Masonry Company, was seriously injured when he fell through an unmarked hole in a roof of a commercial building being built under the direction of general contractor M.A. Mortenson Company. LeDoux appeals from the district court's summary judgment dismissing his personal-injury lawsuit against Mortenson. Because the district court erred when it held that the undisputed facts established as a matter of law that Northland and Mortenson were engaged in a "common enterprise" under Minnesota Statutes section 176.061, subdivisions 1–4 (2010), we reverse and remand.

## FACTS

Joshua LeDoux worked for subcontractor Northland on a construction project for general contractor Mortenson. A Mortenson employee kept a general project schedule and met daily with Northland's foreman about it. In December 2010, LeDoux was assigned to assist his foreman building a parapet on the building's snow-covered roof. The two workers got most of the necessary equipment and material from Northland's yard and they kept their own toolbox on the site, but they borrowed a safety device from Mortenson, and a Mortenson employee instructed LeDoux

how to use it. LeDoux saw other Mortenson employees on the roof performing unrelated work unknown to him.

LeDoux was building scaffolding on the snowy roof when he fell through a hole that had been covered only with a sheet of light, easily breakable material. The fall seriously injured LeDoux. He received workers' compensation benefits from Northland, but he sued Mortenson, alleging that his fall resulted from its negligent failure to warn him about the hole.

Mortenson moved the district court for summary judgment, arguing that, under Minnesota Statutes section 176.061, subdivisions 1–4 (2010), the common-enterprise doctrine barred LeDoux from obtaining damages from Mortenson after he elected workers' compensation benefits through Northland. The district court granted the motion and dismissed LeDoux's complaint.

LeDoux appeals.

### ISSUE

Did the district court err by granting summary judgment to Mortenson based on its holding that Northland and Mortenson were engaged in a common enterprise?

### ANALYSIS

### I

■ LeDoux argues that the district court erred by holding that Northland and Mortenson were engaged in a common enterprise, barring his negligence claim against Mortenson. We review a district court's entry of summary judgment de novo, determining whether the district court properly applied the law and whether genuine issues of material fact exist precluding summary judgment. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). We construe the evidence in the light most favorable to the party against

whom summary judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). Whether a common enterprise existed is a legal question that we review de novo. *Modrow v. JP Foodservice, Inc.*, 656 N.W.2d 389, 393 (Minn.2003).

■ We hold that the district court erred by finding that LeDoux's negligence claim is barred by the common-enterprise doctrine. Recipients of workers' compensation benefits may not obtain damages from a third party when the worker's employer and the third party are "engaged [in] furtherance of a common enterprise." Minn.Stat. § 176.061, subds. 1–4 (2010). The common-enterprise doctrine applies only when "the masters have joined forces and in effect have put the servants into a common pool." *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 893 (Minn.1996) (quotation omitted). To be engaged in a common enterprise, the different employers must be engaged on the same project, the employers' employees must be working together on a common activity, and the employees must be exposed to the same or similar hazards. *McCourtie v. U.S. Steel Corp.*, 253 Minn. 501, 506, 93 N.W.2d 552, 556 (Minn.1958). For the purposes of summary judgment, LeDoux concedes that Northland and Mortenson were engaged on the same project. But he contests whether their relationship met the other two elements of the common-enterprise defense.

■ We will address only the second element—whether Northland and Mortenson were working together on a common activity—because it undermines the district court's common-enterprise conclusion. Whether employees were engaged in a common activity is a question that focuses on the functions performed by the employees, not on the goals of their employers.

*Schleicher v. Lunda Constr. Co.,* 406 N.W.2d 311, 313 (Minn.1987). When the different sets of employees perform different kinds of work and their work is "not related except in a vague, general way looking toward the completion of a structure," they are not engaged in a common activity. *O'Malley,* 549 N.W.2d at 895. To be common, the employees' activities must not merely overlap minimally, they must be "interdependent." *Id.*

The Northland and Mortenson employees were of course in a general sense all trying to complete a single objective: the building of a structure. But they were not otherwise engaged in a common activity. Northland was performing masonry work to build a parapet. Neither LeDoux nor his foreman knew what work the Mortenson employees were performing. They did not even know the names of the Mortenson employees on the roof that day. The evidence presented at summary judgment does not suggest that any Mortenson employee helped build the parapet or that any planned to do so. Nor does it suggest that LeDoux or the foreman aided any Mortenson worker.

■ Mortenson argues that Northland and Mortenson were engaged in a common activity because their employees worked in the same area, coordinated their work scheduling, and sought advice from each other. Working in the same area at the same time does not alone establish an interdependent common activity since the activities were apparently distinct and apparently could have been performed at different times. *Carstens v. Mayers, Inc.,* 574 N.W.2d 733, 735–36 (Minn.App.1998), *review denied* (Minn. Mar. 26, 1998). It might be that Mortenson could not proceed with its work until Northland finished the parapet, but this also does not make their employees' activities common. *See McCourtie,* 253 Minn. at 512, 93 N.W.2d at

560 (holding that the fact that a steel structure would have to be completed before plumbers could begin their work did not mean that the steelworkers and the plumbers were engaged in a common activity). Although seeking specific advice might be part of an interdependent relationship, it satisfies the element only if it is as part of a broader pattern of cooperation. *Cf. O'Malley,* 549 N.W.2d at 896 (finding common activity where "[t]he employees were engaged in activities together throughout the summer, exchanging equipment and seeking advice from the supervisors of both employers"). Given the scant evidence of cooperation in the light most favorable to LeDoux, the activities between the employees cannot be fairly called "interdependent."

Mortenson argues alternatively that its supervisory control over scheduling, access, and onsite safety procedures created a common activity between Mortenson and Northland despite their lack of interaction specific to constructing the parapet. We are not persuaded. Taken to its logical end, Mortenson's argument urges that every general construction contractor who strictly manages the job site is engaged in a common activity with each of its subcontractors. Mortenson's implied contention became express at oral argument. But caselaw has never suggested that supervisory direction alone creates a common activity. *Cf. id.* (holding that supervisory direction about how deep to dig trenches did not create a common activity where supervising company did not assist with actual digging). Northland's required attendance at Mortenson safety meetings also does not prove a common activity. *See McCourtie,* 253 Minn. at 512, 93 N.W.2d at 560 (holding that subcontractor foreman's consultation with general contractor's safety engineer did not mean that the two companies were engaged in a com-

mon activity). Mortenson's lending Northland employees safety equipment and requiring its use likewise fail to create a common activity. *See Carstens,* 574 N.W.2d at 736 (holding that assistance given as a "favor or an accommodation" does not mean that the employees are engaged in a common activity). The record does not include undisputed facts that establish that Northland and Mortenson were engaged in a common activity.

## DECISION

Because the district court granted summary judgment solely on its erroneous determination that Northland and Mortenson were certainly engaged in a common enterprise under Minnesota Statutes section 176.061, subdivisions 1–4, the summary-judgment decision cannot stand. We therefore reverse and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**